**The court incorporates by reference in this paragraph and adopts as the findings and orders of this court the document set forth below. This document has been entered electronically in the record of the United States Bankruptcy Court for the Northern District of Ohio.**



Mary Ann Whipple
United States Bankruptcy Judge

**Dated: October 15 2014**

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF OHIO
### WESTERN DIVISION

| | | |
|---|---|---|
| In Re: | ) | Case No.: 13-30450 |
| | ) | |
| Richard A. Davis, | ) | Chapter 7 |
| | ) | |
| Debtor. | ) | Adv. Pro. No. 13-3166 |
| | ) | |
| Bruce Comly French, Trustee, | ) | Hon. Mary Ann Whipple |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| Mary Blum, et al, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## MEMORANDUM OF DECISION AND ORDER REGARDING
## PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AS TO RICKEY GOOD

This adversary proceeding is before the court on Plaintiff's Motion for Summary Judgment as to Rickey Good's Claimed Interest ("Motion") [Doc. # 18] and Defendant Rickey Good's response [Doc. # 24]. Plaintiff is the Chapter 7 trustee in the underlying bankruptcy case. In his complaint brought against Rickey Good ("Good"), Monitor Bank, Home Loan Savings Bank, and two other parties, Plaintiff alleges that Debtor Richard A. Davis ("Debtor") owns certain real and personal property, including a Sciton Joule Laser, that Defendants Monitor Bank and Home Loan Savings Bank claim an interest in certain property,

including the Joule Laser, and that the net proceeds of the sale of the real and personal property and other funds are held by the bankruptcy estate. Plaintiff seeks a determination of the appropriate ownership interest of the parties in the property and funds and the priority of liens.

Neither Monitor Bank nor Home Loan Savings Bank filed a response to Plaintiff's Motion. Given the caption of Plaintiff's Motion, the court construes the Motion as seeking summary judgment only with respect to Good's interest in the Sciton Joule Laser.[1]  For the following reasons, Plaintiff's Motion will be denied in part and granted in part.

## FACTUAL BACKGROUND

Plaintiff cites to no materials in the record in support of his Motion. Good supports his response with his affidavit and certain documents attached thereto from which the court finds the following facts to be undisputed.

By letter dated September 14, 2011, Sciton responded to an email sent to it by Debtor wherein Debtor asked Sciton to consider an offer to purchase the Joule Laser that Debtor indicated was in his possession. [Doc. # 24, attached Good Aff., Ex. A]. The offer considered by Sciton, as set forth in the letter, provides as follows:

1) Prior to October 1, 2011 you will receive a cashier's check in the amount of $60,000.
2) Starting on October 1, 2011, and on the first of the months that follow I will pay $1,810.50 for the service contract on the Joule.
3) On or before April 1, 2012 you will receive a cashier's check for $50,000.

[*Id.* at 1]. Sciton countered that offer by adding certain provisions for recovery of the Joule Laser in the event the October 1, 2011, payment would not be made and by increasing the April 1, 2012, payment to $52,423.07 to include local sales tax, at which time Sciton stated it would acknowledge transfer of ownership of the Laser. [*Id.* at 1-2]. Sciton's letter states that "[i]f these conditions meet with your approval please sign and date below and return a PDF copy of this letter," which statement is followed by signature lines for both Debtor and Good. [*Id.* at 2]. On September 16, 2011, the counter offer was signed by both Debtor and Good. [*See id.*, Good Aff. ¶ 4]. According to Good, the Laser was in the possession of Sciton at the time of the counter offer. [*Id.* at ¶ 3].

On September 26, 2011, Debtor and Good entered into an agreement captioned "Dr. Richard Davis and Rick Good Loan Agreement" ("the Agreement"). [*Id.* at ¶ 5 & attached Ex. B]. The Agreement

---

[1] Although the Motion refers to both Monitor Bank and Home Loan Savings Bank, the caption of the Motion specifically states that it is as to Rickey Good's claimed interest. The Motion was served via the court's electronic mail notice system. Given the misleading caption, Plaintiff has not put the court in a position to rule on the interests of Monitor Bank and Home Loan Savings Bank.

provides in its entirety as follows:

> The following is an agreement between Dr. Richard Davis and Rick Good for the Joule Laser buyout from Sciton. Rick Good agrees to pay Sciton $57,000 and Dr. Richard Davis agrees to pay Sciton $3,000 by October 1, 2011 to meet the 1st step in the Joule Laser buyout. On October 1, 2011 Dr. Davis and Rick Good will share equal ownership in the Joule Laser until Dr. Davis fulfills the conditions of the following $57,000 loan and agreement. Before April 1, 2012, Dr. Davis will pay Sciton the final buyout payment of $52,423.07 to complete the purchase of the laser from Sciton. At this time Rick Good will retain 50% ownership in the Joule Laser until the terms of the $57,000 loan have been met.

> Dr. Davis agrees to pay Rick Good the $57,000 over a 5 year period with the first payment of $1510.15 due on November 1, 2011 and ending on October 1, 2016. The attached loan schedule illustrates the terms of the loan (20% the first year - $1510.15/month; 15% the second year - $1381.14/month and 10% the final three years $1285.59/month). a 10% late charge will be added to all payments received after the 5th day of each month. This loan can be paid off at any time by paying the balance due in any one of the months of the loan schedules. On completion of the loan Dr. Davis will retain full ownership of the Joule Laser.

[*Id.*]. In accordance with the Agreement, on September 28, 2011, Good provided $57,000, which was forwarded to Sciton for the purchase of the Joule Laser. [*Id.* at ¶¶ 5-6]. Debtor did not fulfill his payment obligations to Good under the Agreement. [*Id.* at ¶ 7].

Debtor filed a petition for relief under Chapter 7 of the Bankruptcy Code on February 13, 2013. As an asset of the bankruptcy estate, Debtor scheduled a one-half interest in the Joule Laser, stating that it is jointly owned with Good. [Case No. 13-30450, Doc. # 17, p. 7/42].[2] Debtor also scheduled Good as holding a secured claim in the amount of $50,298.31 pursuant to the September 26, 2011, Loan Agreement. [*Id.* at 9/42]. On June 27, 2013, Good filed a proof of claim in the underlying bankruptcy case in the amount of $50,298.31. [Doc. # 1, Complaint, ¶ 11 and attached Ex. 1; Doc. # 5, Answer, ¶ 11]. This amount is the principal amount owed to him by Debtor after twelve monthly payments, as set forth in the debt amortization schedule attached to the Agreement. [*See* Doc. # 24, Good Aff. ¶ 5 and attached Ex. B, p.2]. As the basis for the claim, Good's proof of claim states that he is one-half owner of the Joule Laser. [*Id.*]. Plaintiff, as trustee of the bankruptcy estate, holds proceeds in the amount of $32,500.00 from the auction sale of the Joule Laser. [Complaint, ¶ 14; Answer, ¶ 11].

## LAW AND ANALYSIS

### I. Summary Judgment Standard

---

[2] The court takes judicial notice of the contents of its case docket and the Debtor's schedules. Fed. R. Bankr. P. 9017; Fed. R. Evid. 201(b)(2); *In re Calder*, 907 F.2d 953, 955 n.2 (10th Cir. 1990); *St. Louis Baptist Temple, Inc. v. Fed. Deposit Ins. Corp.*, 605 F.2d 1169, 1171-72 (6th Cir. 1979) (stating that judicial notice is particularly applicable to the court's own records of litigation closely related to the case before it).

Under Rule 56 of the Federal Rules of Civil Procedure, made applicable to this proceeding by Federal Rule of Bankruptcy Procedure 7056, summary judgment is proper only where there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In reviewing a motion for summary judgment, however, all inferences "must be viewed in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-88 (1986). The party moving for summary judgment always bears the initial responsibility of informing the court of the basis for its motion, "and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits if any' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the moving party has met its initial burden, the adverse party "may not rest upon the mere allegations or denials of his pleading but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine issue for trial exists if the evidence is such that a reasonable factfinder could find in favor of the nonmoving party. *Id.*

## II.  Motion for Summary Judgment

In his Motion, Plaintiff seeks a determination of the parties' respective interests in the proceeds from the sale of the Joule Laser. He argues that the Agreement between Good and Debtor gave Good a security interest in the Joule Laser but that, under 11 U.S.C. § 544, Good's failure to properly perfect that interest renders his interest to be that of an unsecured creditor. Good, on the other hand, states that he does not claim a security interest in the proceeds and argues instead that the Agreement gave him a one-half ownership interest in the Joule Laser. For the reasons that follow, the court finds that, as trustee of Debtor's bankruptcy estate, Plaintiff has an interest in the entirety of the proceeds subject to an enforceable security interest held by Good in one-half of the proceeds.[3]

The court rejects Plaintiff's argument that Good is merely an unsecured creditor of Debtor given his failure to perfect his security interest. Although Plaintiff offers no evidence of Good's failure to do so, Good states in his answer that he "does not claim a security interest in the laser." [Doc. # 24, p. 2]. The court will, therefore, assume for purposes of this Motion that his security interest was not perfected. Nevertheless, Plaintiff's reliance on § 544 in support of his argument is misplaced. Although § 544 gives

---

[3] Plaintiff alleges in his complaint that the $32,500.00 proceeds from the auction sale of the Joule Laser is subject to an 84.85% pro rata allocation of the $10,735.07 payment to the auctioneer in the amount of $9,108.71, for a net value of $23,391.29 from the sale of the Laser, which allegation Good denies. [Complaint, ¶ 14; Answer, ¶ 14]. As the parties have not addressed this issue, this opinion does not determine the proper allocation of the payment to the auctioneer.

4

a trustee certain avoidance powers, including avoidance of an unperfected security interest, *see, e.g., Graham v. Huntington Nat'l Bank*, 472 B.R. 444, 451 (Bankr. N.D. Ohio 2012), that section is not self-executing, *In re Burks*, 181 B.R. 303, 307 (Bankr. N.D. Ohio 1995) ("The Trustee's avoidance powers are not automatic, but rather require affirmative actions taken by the Trustee as prescribed under the Bankruptcy Rules."); *Noland v. HSBC Auto Finance, Inc. (In re Baine)*, 393 B.R. 561, 566 (Bankr. S.D. Ohio 2008) (stating "lien avoidance is not self-effectuating"). The Trustee's complaint does not allege an avoidance claim under § 544. Seeking avoidance of Good's security interest by motion is improper. *See* Fed. R. Bankr. P. 7001(2) (requiring commencement of an adversary proceeding "to determine the validity, priority, or extent of a lien or other interest in property").

The court thus considers only whether Good's interest in the proceeds from the sale of the Joule Laser flow from an ownership interest or a security interest in the Laser. Neither Plaintiff nor Good cite any authority in support of their respective positions on this issue. Nevertheless, in determining the nature of Good's interest, the court must interpret the contracts at issue and the rights and obligations of the parties to those contracts in light of the provisions of the Uniform Commercial Code ("UCC").

The interpretation of a contract is a matter of state law. *Telxon Corp. v. Fed. Ins. Co.*, 309 F.3d 386, 391 (6th Cir. 2002). Where, as in this case, the contract includes no effective choice of law provision, the court must apply the law of the state with the most significant relationship to the contract, Restatement (Second) of Conflict of Laws § 188,[4] which the court assumes in this case is Ohio law.[5] If a contract is clear and unambiguous, the court need not go beyond the plain language of the agreement to determine the parties' rights and obligations; it must simply give effect to the contractual language. *Blair v. McDonagh*, 177 Ohio App.3d 262, 278 (2008) (citing *Aultman Hosp. Assn. v. Community Mut. Ins. Co.*, 46 Ohio St.3d 51, 53 (1989)). The inquiry ends because "courts presume that the intent of the parties to a contract resides in language they chose to employ in the agreement." *Holdeman v. Epperson*, 111 Ohio St. 3d 551, 554 (2006).

Pursuant to the agreement signed by both Debtor and Good for the purchase of the Joule Laser from Sciton, both parties would have had an ownership interest in the Laser at the time the Laser was delivered.

---

[4] Although as recognized in *In re Dow Corning*, 419 F.3d 543, 548 (6th Cir. 2005), there is a circuit split regarding the use of federal choice-of-law principles versus the forum state's choice-of-law principles when a federal court exercises bankruptcy jurisdiction, both federal common law and Ohio law lead to the Restatement (Second) of Conflicts of Law. *See Med. Mut. of Ohio v. De Sota*, 245 F.3d 561, 570 (6th Cir.2001) (adopting Restatement (Second) of Conflicts of Law under federal common law); *Morgan v. Biro Mfg. Co.*, 15 Ohio St.3d 339, 341-42 (1984) (adopting the Restatement (Second) of Conflicts of Law under Ohio law); *Ohayon v. Safeco Ins. Co. of Ill.*, 91 Ohio St.3d 474, 476 (2001).

[5] The parties direct the court to no facts indicating the law of any other state should apply.

5

*See* Ohio Rev. Code § 1302.42(B) (providing that "title passes to the buyer at the time and place at which the seller completes performance with reference to the physical delivery of the goods, despite any reservation of a security interest. . ."). This is true notwithstanding any attempt by Sciton to retain title until after the April 1, 2012, final payment was received by it. *See* Ohio Rev. Code § 1302.42(A) (providing that "[a]ny retention or reservation by the seller of the title (property) in goods shipped or delivered to the buyer is limited in effect to a reservation of a security interest"); Ohio Rev. Code § 1309.202, Official Comment 2 (stating that "the characteristics of a security interest that secures the purchase price of goods are the same whether the secured party appears to have retained title or the debtor appears to have obtained title and then conveyed title or a lien to the secured party").

The issue then is the effect of the subsequent Agreement between Debtor and Good on Good's ownership interest. In making this determination, the court notes that "no valid contract may be made contrary to statute, and that valid, applicable statutory provisions are parts of every contract." *Holdeman v. Epperson*, 111 Ohio St. 3d at 555-56. With this in mind, and considering the terms of the Agreement in light of relevant provisions of the UCC, the court finds that the Agreement is, in effect, a conditional sales agreement and that, pursuant to the Agreement, Good sold his fifty percent ownership interest to Davis for the sum of $57,000.00, which amount was financed by Good as set forth in the Agreement and secured by his fifty percent ownership interest.

Under Ohio law, a "security interest" is defined as "an interest in personal property or fixtures which secures payment or performance of an obligation." Ohio Rev. Code § 1301.201(B)(35) (UCC § 1-201). "Whether an agreement creates a security interest depends not on whether the parties intend that the law characterize the transaction as a security interest but rather on whether the transaction falls within the definition of 'security interest' in [UCC] section 1-201." Ohio Rev. Code § 1309.102, Comment 3(b); *see United States v. Poling*, 73 F. Supp. 2d 882, 893 (S.D. Ohio 1992) ("It is a long-standing rule that courts will determine the true nature of a security transaction, and will not be prevented from exercising their function of judicial review by the form of words the parties may have chosen."); *see* Ohio Rev. Code § 1309.109(A)(1) (UCC § 9-109) (providing that Article 9 applies to "[a] transaction, regardless of its form, that creates a security interest in personal property or fixtures by contract").

In this case, Good's retention of an ownership interest in the Laser until Debtor paid the $57,000 debt owed to him falls within the definition of a "security interest" under UCC § 1-201 as it secures payment of Debtor's obligation under the Agreement. *See, e.g., Derryberry v. FCA Leasing Corp. (In re DeVita Fruit Co.)*, 473 F.2d 585, 588 (6th Cir. 1973) (noting that under a conditional sales contract providing that

6

equipment would remain the property of the seller until the purchase price was paid, the seller's "retention of title had the effect of the reservation of a security interest" under the UCC); *Brown Motors Leasing v. Reucher*, 80 Ohio App. 3d 225, 228 (1992) (stating that in a conditional sales contract, "the seller holds legal title as *security* for the payment of the purchase price" (emphasis in original)); *Associated Indus. v. Keystone Gen., Inc. (In re Keystone Gen. Inc.)*, 135 B.R. 275, 279 (Bankr. S.D. Ohio 1991) ( explaining that "while the Uniform Commercial Code does permit the parties some power by allowing the parties to agree as to when title will transfer, the Code and the caselaw place a limitation on this power. In short, if the seller attempts to retain title after delivery or until paid in full, all the seller gets is a security interest."). This is consistent with the provisions that the rights and obligations under Article 9 of the UCC "apply whether title to collateral is in the secured party or in the debtor," Ohio Rev. Code § 1309.202 (UCC § 9-202), and that any retention by the seller of title in goods delivered to the buyer "is limited in effect to a reservation of a security interest," Ohio Rev. Code § 1302.42(A) (UCC § 2-401).

Having determined that the Agreement reserved in Good a security interest and not an ownership interest, the court also addresses the enforceability of that interest with respect to the Joule Laser. "A security interest attaches to collateral when it becomes enforceable against the debtor with respect to the collateral. . . ." Ohio Rev. Code § 1309.203(A) (UCC § 9-203). A security interest is enforceable against a debtor if: (1) value has been given, (2) the debtor has rights in the collateral, and (3) the debtor has authenticated a security agreement that provides a description of the collateral. Ohio Rev. Code § 1309.203(B).

In this case, all three requirements are met. First, there is no dispute that Debtor signed the Agreement creating the security interest and describing the collateral as the Joule Laser. *See* Ohio Rev. Code § 1309.102(A)(74) (defining "security agreement" as "an agreement that creates or provides for a security interest"). Second, the undisputed facts show that value was given by Good. Pursuant to the Agreement, Good provided Debtor with financing in the amount of $57,000 for the purchase of the Joule Laser. And finally, there is no dispute that Debtor had possession of, and rights in, the Laser at the time he filed his Chapter 7 petition. The Laser is listed as an asset on Debtor's bankruptcy schedules and has been sold by Plaintiff. As all requirements of enforceability are satisfied, Good's security interest attached to the Joule Laser and, thus, attaches to the proceeds from the sale of the Laser. *See* Ohio Rev. Code § 1309.315(A)(2) (UCC § 9-315). Although he did not perfect his security interest, Good nevertheless has a valid security interest in the proceeds from the sale of the Laser that is enforceable against Debtor. *See Fitzpatrick v. Fed. Deposit Ins. Corp.,* 765 F.2d 569, 573 -574 (6th Cir. 1985) ("An unperfected security

7

interest under the Uniform Commercial Code is valid against the debtor."). As trustee of Debtor's bankruptcy estate, absent taking steps required to avoid the security interest, Plaintiff succeeds only to the interests in property that Debtor had at the commencement of the bankruptcy case and takes the property subject to the same restrictions that existed at that time. *See* 11 U.S.C. § 541(a)(1); *Demczyk v. The Mutual Life Ins. Co. of New York (In re Graham Square, Inc*.), 126 F.3d 823, 831 (6th Cir. 1997); *In re Metropolitan Environmental, Inc.*, 293 B.R. 896, 898 (Bankr. N.D. Ohio 2003).

**THEREFORE,** for all of the foregoing reasons, good cause appearing,

**IT IS ORDERED** that Plaintiff's Motion for Summary Judgment as to Rickey Good's Claimed Interest [Doc. # 18] be, and hereby is, **DENIED** to the extent it seeks a determination that Good's failure to perfect his security interest automatically renders his interest to be that of an unsecured creditor in Debtor's bankruptcy case and is **GRANTED** to the extent the Motion seeks a determination of the parties' respective interests in the Joule Laser, which determination is as follows: Plaintiff, as Chapter 7 Trustee in the underlying bankruptcy estate, has an interest in the entirety of the proceeds from the sale of the Joule Laser subject to an enforceable security interest held by Good in one-half of those proceeds and any enforceable security interests of Monitor Bank and/or Home Loan Savings Bank that are yet to be determined.

###